FILED

**NOT FOR PUBLICATION**

DEC 11 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PHURBA SHERPA, | No. 12-71047 |
| Petitioner, | Agency No. A200-706-016 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 4, 2013[**]
Seattle, Washington

Before: O'CONNOR, Associate Justice,[***] and TALLMAN and BEA, Circuit Judges.

Phurba Sherpa, a citizen and native of Nepal, petitions for review of a final

order of removal from the Board of Immigration Appeals ("BIA").  The BIA

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]    The Honorable Sandra Day O'Connor, Associate Justice of the United States Supreme Court (Ret.), sitting by designation.

reversed an Immigration Judge's ("IJ") grant of withholding of removal under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition for review.

First, Sherpa challenges the BIA's conclusion that he failed to establish that it was more likely than not that he would be tortured if removed to Nepal. *See* 8 C.F.R. § 1208.16(c)(2) (requiring a petitioner to prove that it is "more likely than not that he or she would be tortured" in the country of removal in order to obtain CAT relief). In determining the probability that a petitioner will be tortured, all relevant evidence must be considered. *Ridore v. Holder*, 696 F.3d 907, 912 (9th Cir. 2012) (citing 8 C.F.R. § 1208.16(c)(3)). But, as here, when the petitioner does not challenge the prior adverse credibility determination, the CAT claim must be considered without the discredited testimony, and the remaining evidence alone must show a likelihood of torture. *Shrestha v. Holder*, 590 F.3d 1034, 1048–49 (9th Cir. 2010). Evidence relevant to assessing the probability of future torture includes credible evidence of past torture, consideration as to whether the petitioner can relocate to a different part of the country for safety, and evidence of gross violations of human rights in the country of removal. 8 C.F.R. § 1208.16(c)(3).

2

Sherpa argues that the BIA erred when it concluded that he was not previously subjected to mental torture by the Maoists fighting the Nepalese government. But, after setting aside Sherpa's discredited testimony, the record does not compel a finding that Sherpa was subjected to "prolonged" mental harm due to the threat of imminent death at the hands of Maoist forces. *See* 8 C.F.R. § 208.18(a)(4) (defining "mental torture" as required for CAT relief). The letters from Sherpa's relatives and fellow villagers only vaguely describe Sherpa's confrontations with the Maoists, where Maoists allegedly threatened Sherpa's life and held Sherpa captive but released him after he carried their supplies. Instead, the letters mechanistically conclude without sufficient factual basis that Sherpa was "physically and mentally" tortured. Substantial evidence therefore supports the BIA's determination that Sherpa did not suffer past mental torture. *See Garcia-Milian v. Holder*, 730 F.3d 996, 1000–01 (9th Cir. 2013) (noting that we must uphold a BIA decision unless the evidence in the record "compels" a contrary result).

Sherpa next argues that regardless of whether he demonstrated past torture, he proved that he was likely to be subjected to future torture. To support this argument, he points to country reports, a letter he received from the Maoists while living in Kathmandu, and the medical documents and pictures depicting injuries

sustained by his brother and son at the hands of Maoists. Although the country reports indicate that torture does occur in Nepal, the reports alone do not establish a sufficiently particularized likelihood that Sherpa would suffer torture. *See Dhital v. Mukasey*, 532 F.3d 1044, 1051–52 (9th Cir. 2008) (holding that reports describing the ongoing struggle between the Nepalese government and the Maoists do not show petitioner "would face any particular threat of torture beyond that of which all citizens of Nepal are at risk"). And the other evidence Sherpa relies on does not demonstrate a probability that he will be tortured if returned to Nepal.

Letters, photographs, and medical reports from Sherpa's wife and brother demonstrate that certain Maoists, namely those from Sherpa's village, are capable of violence and may be looking for Sherpa. But these letters establish only a possibility—as opposed to a probability—that Sherpa would be tortured if returned to Kathmandu, Nepal. Sherpa's brother was attacked only when he returned to his home village, and Sherpa's son was harassed by Youth Communist League Maoists from the village while those individuals were in Kathmandu.

Moreover, the letter from the Maoists that Sherpa received while living with his uncle in Kathmandu undercuts the likelihood that Sherpa would be tortured if returned there. That letter, which asks Sherpa to "be present in the [party's] office [within one week] . . . [to] confer clarification" about allegations that Sherpa

4

provided information about Maoists to the Nepalese Army was delivered to Sherpa's place of residence. Its delivery demonstrates that Maoists knew where to find Sherpa and yet did not follow through on the letter's threat to arrest him. This corresponds to Sherpa's admission that he was not physically harmed by the Maoists during the two years he lived in Kathmandu. Substantial evidence in the record therefore supports the BIA's conclusion that Sherpa would probably not be tortured. *See Shrestha*, 590 F.3d at 1049 (upholding the denial of CAT relief where a Nepalese citizen failed to show that his experience falls into the category of "very limited cases" where a person can show that he "faces a risk in his . . . home area at the hands of the Maoists" (internal quotation marks omitted)).

Second, Sherpa asserts that the BIA erred in failing to provide a reasoned explanation for why he was ineligible for temporary deferral of removal under CAT. Although temporary deferral of removal is available in instances where withholding of removal is not available, *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011), it still requires an alien to show that it is more likely than not that he would be tortured if removed, *see Edu v. Holder*, 624 F.3d 1137, 1145 (9th Cir. 2010). A failure of proof in demonstrating a probability of future torture is therefore dispositive of both deferral of removal under CAT and withholding of removal under CAT.

5

In the present case, the BIA rejected deferral of removal under CAT by stating the following:

> As the respondent did not appeal the denial of asylum and withholding of removal, the material support of terrorist bar only precludes his application for protection under the Convention Against Torture. Although such bar does not disqualify him from receiving a temporary deferral of removal under the Convention Against Torture, for the reasons discussed above, the respondent failed to carry his burden of proof for such form of relief.

Through this statement, the BIA referred Sherpa to its prior, detailed analysis concluding that Sherpa was ineligible for withholding under CAT due to insufficient proof that he would be tortured if he returned to Nepal. This was sufficient as the BIA is not required to repeat the same analysis twice. Because we conclude that substantial evidence supports the BIA's conclusion that Sherpa is ineligible for all forms of CAT relief due to his failure of proof on the issue of future torture, we do not address unchallenged, alternative conclusions of the BIA.

**PETITION DENIED.**