*978 THOMAS, Chief Judge,
concurring in part and dissenting in part:
I agree with the majority that under the REAL ID Act, an Immigration Judge’s adverse credibility determination may be supported exclusively by background evidence in the record. However, I respectfully dissent from the majority’s decision to uphold the agency’s adverse credibility determination. The IJ and BIA mischar-acterized the background evidence and did not “consider the totality of the circumstances” as required by 8 U.S.C. § 1158(b)(l)(B)(iii). I would grant Singh’s petition for review.
I
I agree with the majority that under the -Real ID Act, a petitioner’s specific testimony may be discredited solely by background evidence in the record. However, an IJ is still required to consider the totality of the circumstances and to make an individualized credibility determination that rests on “specific and cogent reasons.” 8 U.S.C. § 1158(b)(l)(B)(iii); Shrestha, 590 F.3d at 1042 (“The REAL ID Act did not strip us of our ability to rely on the institutional tools that we have developed, such as the requirement that an agency provide specific and cogent reasons supporting an adverse credibility determination, to aid our review.”). As a result, it is a rare case that an IJ is able to rest an adverse credibility determination on background evidence alone without violating the other requirements imposed by § 1158(b)(1 )(B)(iii) and by controlling precedent. Indeed, this case offers a useful illustration of the perils of relying too heavily on broad generalizations contained in static country reports when refuting an asylum applicant’s specific testimony.
II
Turning to the specifics of this case, substantial evidence does not support the agency’s adverse credibility determination. The background evidence in the record does not discredit Singh’s testimony that he was detained and beaten by the police in 2005 and 2006 and targeted by four men dressed as Sikh militants in 2006.
The IJ and BIA suggest that Singh’s testimony that he was detained and interrogated by the Punjab police is not credible because this background evidence indicates the Indian government is concerned only with arresting high-level Sikh militants. This is not an accurate characterization of the record. A 2003 Bureau of Citizenship and Immigration Services report submitted into evidence by the government provides that while some experts believe the Punjab police will track down only high-profile suspects who have relocated to another province in India, others believe that “any Sikh who has been implicated in political militancy would be at risk anywhere in India.” This report indicates that it remains an open question whether the police in Punjab are concerned only with high-profile suspects.
Moreover, the same report corroborates Singh’s testimony. It cites an expert on religious militancy who noted that while “Punjab police no longer systematically persecute Sikhs simply for holding [pro-Sikh independence] views ... individual Sikhs are ‘probably targeted’ at times by local police because of their actual or suspected [pro-Sikh independence] advocacy, even though high-level officials no longer see such views as a threat.” The expert further noted that “[t]here is still widespread harassment of anyone who expresses separatist sympathies” and that reports of police detention and physical abuse “seemed plausible given conditions in Punjab.”
The IJ and BIA further suggest that Singh’s testimony that he was harassed by Sikh militants in 2006 is not credible because the background evidence in the rec *979 ord indicates that Sikh militant actiyity ended in the 1990s. The background evidence does indicate that widespread, organized activity by militant Sikhs ended in the 1990s. But it is still plausible that Singh was harassed by former Sikh militants who independently engage in criminal activity and who continue to rob and terrorize the population. Singh testified that he was robbed by four men dressed like Sikh terrorists who warned him to stop supporting the Nirankari sect. This testimony is not necessarily inconsistent with reports that the majority of armed opposition groups in Punjab are no longer active.
Even if armed resistance is no longer widespread and pro-independence Sikhs are no longer the primary targets of police brutality in Punjab, it is not implausible that at least some former militants continue to engage in violent criminal behavior and at least some Sikhs continue to be harassed by the police for their perceived affiliation with the resistance movement. Indeed, it is arguably more implausible that — after more than a decade of conflict — the militants would suddenly cease all criminal activity and the police would cease all persecution of Sikh activists.
The IJ and BIA “cherry-pick[ed] solely facts favoring an adverse credibility determination while ignoring facts that undermine[d] that result.” Shrestha v. Holder, 590 F.3d 1034, 1040 (9th Cir.2010). As a result, the IJ’s adverse credibility determination is not supported by substantial evidence.
For these reasons, I concur in part and dissent in part.