BEA, Circuit Judge,
dissenting:
I agree with the majority that petitioner Misael Francisco Najarro-Portal is not entitled to withholding of removal and that substantial evidence supports the immigration judge’s (“IJ”) adverse credibility determination. Unlike the majority, I would also find that Najarro-Portal is not entitled to deferral of removal under the Convention Against Torture (“CAT”).
For Najarro-Portal to be entitled to deferral of removal under the CAT, we must find sufficient evidence in the record— other than Najarro-Portal’s testimony, account the Id’s adverse credibility finding— to compel the conclusion that it is more likely than not that Najarro-Portal would be tortured by or with the acquiescence of Salvadoran officials if he were removed to El Salvador. See Shrestha v. Holder, 590 F.3d 1034, 1048-49 (9th Cir.2010); see also 8 C.F.R. § 1208.18(a) (defining “torture” for purposes of the CAT). I find the record insufficient to compel that conclusion.
I note first that when Najarro-Portal hired Jaime Mira as his attorney, he told Mira that he believed he had -faced persecution [1] in El Salvador because he refused to talk about human-rights violations he witnessed while serving in the Salvadoran army. Mira discovered, after reviewing Najarro-Portal’s prison file from El Salvador, that prison officials may have mistreated Najarro-Portal due to Najarro-Portal’s advocacy of prisoners’ rights. Mira then based Najarro-Portal’s immigration case on that story. This is important for two reasons: (1) It is undisputed that Mira proffered only a fraction of Na-jarro-Portal’s prison records during the immigration proceedings, and he could have excluded documents that would have contradicted the story he crafted, and (2) the majority relies in large part on Mira’s statements as to what Jeanne Rikkers, Judge Astrid de los Angeles Torres, and Eliza Aracely Sarcefto Monge told him, which are mostly uncorroborated. I do not mean to impugn Mira’s character, but I find this hearsay evidence insufficiently weighty to displace the decisions of the IJ and the Board of Immigration Appeals (“BIA”), who are better positioned to make credibility determinations and to whom we afford significant deference.
The other evidence in the record also does not compel the conclusion that Najar-ro-Portal was, or will be, tortured by Salvadoran officials. True enough, there is documentation of Najarro-Portal’s prison transfers and his broken jaw, but there is nothing connecting those transfers and his injury to malfeasance of prison officials. The undated letters Najarro-Portal wrote to his mother similarly fail to make that connection; they mention “the beatings I *724 am receiving” and his injury, but do not tie prison officials to any abuse Najarro-Portal received in prison.[2] As Najarro-Portal admitted to joining a gang in prison for “protection,” and was viewed as a gang leader, the record supports other plausible reasons for his injury. In fact, years later, while he was in the United States and presumably safe from Salvadoran prison officials, Najarro-Portal told members of his church that his jaw was* broken in a prison “quarrel” without saying that prison officials were involved.
Monge’s declaration supports a finding that Najarro-Portal may be harmed if he returns to El Salvador, but suggests that Salvadoran prisoners and their friends— not Salvadoran officials — are likely to inflict the harm. Moreover, the declaration suffers from credibility problems of its own: Monge wrote it in June 2011, when she was “preparing to migrate to Canada,” but she was not made available during the immigration proceedings that occurred over a year later, even though the IJ requested that she testify.[3]
Najarro-Portal’s fear of being tortured or killed by Salvadoran officials is undermined by his experience in El Salvador. Najarro-Portal spent the last few months of his prison sentence in a prison in Ciudad Barrios, apparently without incident. He was free for several months, during which time he was not killed or harmed, and was re-imprisoned on a drug-possession charge. Najarro-Portal then spent another several months in jail, and there is no evidence that government officials harmed him during that time.
For all of these reasons, I do not believe that Najarro-Portal has shown that the record compels the conclusion that it is more likely than not that he would be tortured by or with the acquiescence of Salvadoran officials if he were removed to El Salvador. As a result, I would not find him entitled to deferral of removal under the CAT, and I respectfully dissent from that portion of the majority’s decision.

. Whether a petitioner will be "persecuted” is relevant for granting asylum. See 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 208.13. Najarro-Portal originally sought asylum, but concedes he is ineligible for it. Whether Najarro-Por-tal will be "persecuted” if he returns to El Salvador is not the relevant inquiry for granting relief under the CAT. See 8 C.F.R. §§ 1208.16- 18.

. Admittedly, Najarro-Portal's mother testified before the IJ that she saw her son in prison with a broken jaw and bruised face and that Najarro-Portal told her "the authorities”- beat him up. The IJ could reasonably have found her account not credible. Najarro-Portal’s mother was not clear about when she saw Najarro-Portal in prison, and her testimony that she saw Najarro-Portal with a broken jaw in 2006 is inconsistent with other evidence showing that his jaw was broken in 2004. Moreover, Najarro-Portal’s mother testified that she went to the immigration hearing from El Salvador when other evidence showed that she is a U.S, citizen and was living with Najarro-Portal and his wife in California.

. The IJ stated: "[Wje’ve got to get testimony from [Monge] because there’s an issue; in her declaration there's some issues. And it’s important because she’s the only one who's able to testify about events post-prison to the extent that this, that, and the other thing happened in prison, he’s not in prison. They released him. He's' not under any charges in El Salvador. So then what happened after he got out becomes critical. And she’s the only witness to that.”