**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| YANMING XIONG, | No. 12-73898 |
| Petitioner, | Agency No. A099-369-838 |
| v. | |
| LORETTA E. LYNCH, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 11, 2016**
Pasadena, California

Before: FARRIS, CLIFTON, and BEA, Circuit Judges.

Yanming Xiong petitions for review of the Board of Immigration Appeals'

dismissal of his appeal.  We have jurisdiction under 8 U.S.C. § 1252.  We deny the

petition for review.

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Xiong argues that the BIA erred in finding that he was not persecuted in China on account of his violation of the family planning laws.

Xiong testified that his wife was forced to have an abortion when she became pregnant with their second child. However, the spouse of someone who is forced to have an abortion is not necessarily entitled to asylum. *Jiang v. Holder*, 611 F.3d 1086, 1094 (9th Cir. 2010). In addition to the abortion, the spouse must show that he engaged in "other resistance" to his country's coercive population control laws. *Id.* The spouse must also show that he suffered some persecution beyond the abortion itself. *Id.*

We review as a matter of law whether Xiong's actions constitute "other resistance." *See id.* at 1093–94. We review for substantial evidence the BIA's determination that Xiong did not suffer past persecution, and does not have a well-founded fear of future persecution. *See id.* at 1093, 1095–97.

Here, Xiong did not show that he engaged in "other resistance." Xiong admitted that the pregnancy was not intentional. While Xiong testified that he planned to hide the pregnancy from the government and keep the child, he did not testify to any acts of resistance that he undertook.

Xiong also failed to show past persecution on account of his wife's pregnancy. His hospitalization for high blood pressure is not sufficient. The

government did not intentionally inflict this high blood pressure on Xiong. Substantial evidence supported the finding that Xiong's high blood pressure did not rise to the level of persecution.

Substantial evidence also supported the BIA's determination that Xiong failed to show an independent well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(2). The government took no intentional actions against Xiong after the forced abortion. Xiong's wife, who was the one actually forced to have the abortion, currently lives in China without problem. Nothing in the record suggests that Xiong would now be persecuted for this pregnancy if he returned to China.

Xiong also argues that the BIA erred in affirming the IJ's adverse credibility determination with regard to his forced relocation claim. We review adverse credibility determinations for substantial evidence. *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014). We will only reverse if the record compels the conclusion that the adverse credibility determination was incorrect. 8 U.S.C. § 1252(b)(4)(B); *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008).

When reviewing adverse credibility determinations, we look first to the reasons given by the BIA. *Lai*, 773 F.3d at 970. We then look to the IJ's oral decision for an explanation of those reasons. *Id.*

The BIA gave two reasons for affirming the adverse credibility determination: 1) Xiong testified inconsistently about whether he was beaten during both his interrogations, or only during the second interrogation; and 2) Xiong's written application stated that he was offered 6,000 RMB per square meter for his apartment when he was forced to relocate, but at the hearing Xiong testified that he was offered 2,600 RMB per square meter.

Both reasons were supported by substantial evidence. Whether Xiong was beaten once or twice is not a "trivial" inconsistency. *See Shrestha v. Holder*, 590 F.3d 1034, 1043–44 (9th Cir. 2010) (holding that an IJ may base an adverse credibility determination on a "minor" inconsistency, but not a "trivial" one). The number of beatings is highly relevant to whether Xiong's mistreatment rose to the level of persecution. Xiong's explanation for this inconsistency was that he was uneducated. *See id.* at 1044 (holding that an IJ must consider an applicant's explanation for any inconsistencies). Even an uneducated person would likely remember how many times he was beaten. The IJ and BIA did not err in finding this explanation unconvincing.

The second inconsistency was also not "trivial." Xiong claimed that he was beaten after protesting the inadequate compensation he was offered for his apartment. It was therefore very relevant how much compensation Xiong was

4

offered. Xiong's explanation for this inconsistency was that he was initially offered 6,000 RMB per square meter, if he moved out by a certain date. When he stayed past that date, the compensation offered went down. However, Xiong was specifically asked on cross-examination whether he was ever offered a different amount than 2,600 RMB per square meter, and he said no. The IJ and BIA did not err in finding this explanation unpersuasive.

The record does not compel the conclusion that the adverse credibility determination was incorrect. The BIA did not err in denying Xiong's applications for asylum and withholding of removal based on his forced relocation.

**DENIED**.