NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 11 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RANJIT SINGH,

               Petitioner,

  v.

MERRICK B. GARLAND, Attorney
General,

               Respondent.

No.   17-70028

Agency No. A205-587-181

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 7, 2021[**]
Portland, Oregon

Before: W. FLETCHER, BEA, and FRIEDLAND, Circuit Judges.

Ranjit Singh, a native and citizen of India, petitions for review from an order

of the Board of Immigration Appeals ("BIA") upholding the denial of his claims

for asylum, withholding of removal, and relief under the Convention Against

Torture ("CAT"). Singh claimed that he was persecuted on account of his political

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision
without oral argument. See Fed. R. App. P. 34(a)(2).

activities in India. The Immigration Judge ("IJ") found Singh's testimony not credible and accorded it no weight, and the BIA affirmed. We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition.

The agency[1] based its adverse credibility determination primarily on three inconsistencies between Singh's testimony and other evidence in the administrative record including Singh's own prior statements. First, the agency cited an inconsistency regarding Singh's medical treatment after he was allegedly beaten by members of the Akali Dal (Badal) party ("Badal Party") on two occasions. Singh submitted notes from a doctor in India that stated he was treated "in hospital" for nine and ten days, respectively. In his testimony, however, Singh said he was treated at home after both incidents. When provided an opportunity to explain this discrepancy, Singh initially said that he picked up prescriptions at the hospital, and later said that he could not remember what happened. The agency deemed these explanations unreasonable, and the record does not compel a contrary conclusion. *See Kin v. Holder*, 595 F.3d 1050, 1054-55 (9th Cir. 2010).

Second, the agency cited an inconsistency about whether Singh's father is alive and, if not, the cause of his death. Singh testified that after he was beaten by

---

[1] We refer to the BIA and the IJ collectively as "the agency." *See Medina-Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir. 2014) (explaining that this court will review both the BIA and the IJ's decisions when the BIA cites *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994)).

Badal Party members for the second time, they told him that they would kill him "the way they have killed [his] father." But during an initial border interview with CBP, Singh referred to his father in the present tense several times. When given an opportunity to explain why he referred to his father in the present tense, Singh initially said he could not remember. Four months later at another hearing, Singh clarified for the first time that his "paternal grandfather brought [him] up and [he] called him as father." The IJ properly rejected this explanation as unreasonable because Singh named his father—not his grandfather—when asked by CBP to name his parents, and he never said anything in the interview to suggest that his references to his "father" were to his grandfather. Because this discrepancy "is at the heart of [Singh's] claim," the agency could assign it "great weight" in assessing Singh's credibility. *Shrestha v. Holder*, 590 F.3d 1034, 1047 (9th Cir. 2010).

Third, the agency cited inconsistencies in Singh's testimony about his political activism. In his sworn declaration, Singh said he had been "working" for the Badal Party before joining the Shiromani Akali Dal Mann (Mann) party ("Mann Party") in 2012. But at his merits hearing, Singh said he never worked for or joined the Badal Party. When asked to explain the statement in his declaration, Singh clarified that he was "rubbing shoulders" with the Badal Party by attending their functions, which was like working for the party, but "not in [the] actual sense." When asked how long he was doing this with the Badal Party, Singh said

3

"over a long period of time," but he also said that he started in 2012, which was the same year that he said he joined the Mann Party. As with the inconsistency about Singh's father, Singh's inconsistency on this issue goes to the "heart of the claim," and it was proper for the agency to afford it significant weight. *Id.*

In the absence of credible testimony, Singh's asylum and withholding of removal applications fail. *See Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003). In addition, substantial evidence supports the agency's determination that Singh failed to rehabilitate his discredited testimony, or otherwise meet his burden of proof, through other evidence in the record. *See Yali Wang v. Sessions*, 861 F.3d 1003, 1008-09 (9th Cir. 2017).

Substantial evidence also supports the agency's denial of CAT relief because Singh failed to show it is more likely than not that he will be tortured if returned to India. *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1033 (9th Cir. 2014).

**PETITION DENIED.**