**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BALWINDER SINGH, | No. 15-70612 |
| Petitioner, | Agency No. A200-235-359 |
| v. | |
| MATTHEW G. WHITAKER, Acting Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 13, 2018
San Francisco, California

Before: BEA and MURGUIA, Circuit Judges, and SOTO,[**] District Judge.

Balwinder Singh, a citizen of India, petitions for review of the Board of

Immigration Appeals' ("BIA") decision dismissing his appeal of the Immigration

Judge's ("IJ") decision denying his applications for asylum, withholding of

removal, and protection under the Convention Against Torture ("CAT"). Singh

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable James Alan Soto, United States District Judge for the District of Arizona, sitting by designation.

claims persecution by members of India's Congress Party due to his membership in the "Mann Party," a political party within India that seeks the formation of an independent Sikh state. The IJ denied relief based principally on an adverse credibility determination, which Singh challenges here. We have jurisdiction pursuant to 8 U.S.C. § 1252. We grant the petition and reverse.

Under the REAL ID Act, the agency must provide "specific and cogent reasons in support of an adverse credibility determination." *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010) (citation omitted). The agency should consider the totality of the circumstances, statutory factors, and other relevant evidence. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Courts give a "healthy measure of deference to agency credibility determinations," as "IJs are in the best position to assess demeanor and other credibility cues that we cannot readily access on review." *Shrestha*, 590 F.3d at 1041. However, an IJ may not "cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result." *Id.* at 1040. Similarly, while inconsistencies no longer must go to the heart of the claim, an "utterly trivial" inconsistency will not form a sufficient basis for an adverse credibility determination. *Id.* at 1043. The petitioner should have the opportunity to provide an explanation for any inconsistency. *Ren v. Holder*, 648 F.3d 1079, 1092 n.14 (9th Cir. 2011). The IJ should consider the petitioner's explanation, as well as "other record evidence that sheds light on

2

whether there is in fact an inconsistency at all." *Shrestha*, 590 F.3d at 1044.

Relying on the IJ's credibility determination, the BIA concluded that Singh was not credible based upon three grounds: (1) the implausibility of Singh's testimony that he did not inform Mann Party leaders that he was twice attacked by Congress Party members, (2) the omission in affidavits submitted by Mann Party leaders of any mention of the attacks on Singh, and (3) inconsistencies in Singh's testimony with regard to his voting history and voting ID card.[1] Reviewing for substantial evidence, we conclude that all three grounds were unsupported by the record. *See Lin v. Gonzales*, 434 F.3d 1158, 1162 (9th Cir. 2006).

First, the IJ's conclusion that it was implausible that Singh would not have notified the Mann Party leaders of the two attacks that he suffered at the hands of the Congress Party workers was not supported by substantial evidence. Here, the IJ mischaracterized Singh's testimony about his relationship with the local Mann Party leader, Kashmiri. *See Ren*, 648 F.3d at 1089 (reversing where "the IJ's adverse credibility determination rested largely on mischaracterizations of Ren's testimony that are belied by the record."). The IJ found it striking that Singh would not notify the Mann Party of the violence "in light of his personal relationship with

---

[1] "Where, as here, the BIA reviewed the IJ's credibility-based decision for clear error and relied upon the IJ's opinion as a statement of reasons but did not merely provide a boilerplate opinion, we look to the IJ's [] decision as a guide to what lay behind the BIA's conclusion." *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014) (internal quotation marks and citation omitted).

[Kashmiri], with whom he communicated about party tasks with some regularity." The IJ was incorrect that Singh had a "personal relationship" with the local Mann Party leader, Kashmiri, or that Singh communicated with Kashmiri regularly. Singh consistently testified that he had no personal relationship with the district president Kashmiri and that Kashmiri called Singh 2–3 times with instructions to put up posters, but Singh never met Kashmiri and did not know him. Singh further testified that he never attended a party meeting, and that Kashmiri likely obtained his phone number from party records. The IJ failed to acknowledge this testimony. Likewise, the IJ placed too much significance on the fact that the village counselor, Sarpanch Kaur, knew about the attacks in light of the testimony that Singh and his family *did* have a personal relationship with Sarpanch Kaur. The fact that Singh had no personal relationship with Kashmiri, but did have a personal relationship with Kaur makes it eminently plausible that Kaur would know about the attacks, but Kashmiri would not. *See Bhattarai v. Lynch*, 835 F.3d 1037, 1044 (9th Cir. 2016) ("The fact that Bhattarai stayed with friends during his first days in Kathmandu in 2002 but by 2010 had a rented home in a Kathmandu suburb is not only internally consistent but also eminently believable."). Finally, the IJ considered Singh's explanation of why he did not report the attacks to the Mann Party, but failed to consider the second part of Singh's explanation, regarding why he reported the attacks to the police. When considered together, both explanations

4

plausibly reflect Singh's dedication to his political party and his desire not to upset the party's "balance." The failure on the part of both the IJ and the BIA to fully consider Singh's explanation was an error. *See Shrestha*, 590 F.3d at 1044 ("To ignore a petitioner's explanation for a perceived inconsistency and relevant record evidence would be to make a credibility determination on less than the total circumstances in contravention of the REAL ID Act's text."). In sum, the IJ failed to state "a legitimate, articulable basis" for his disbelief that Singh would not tell the Mann Party leaders about the attacks. *See Lin*, 434 F.3d at 1162 (alterations omitted).

Second, the IJ's reliance on the omission of any mention of the attacks in the letters of the Mann Party leaders ignores Singh's testimony that he did not inform those leaders of the attacks. Regarding Kashmiri's letter, there is no evidence in the record that Kashmiri ever learned about the attacks. For the reasons already discussed, it is not implausible that Singh would choose not to tell Kashmiri about the attacks, as the two did not have a personal relationship. Similarly, Mr. Mann's letter almost exclusively discussed problems faced by Sikhs in India, and contained no details of Singh's particular case. This is consistent with the fact that Singh testified that his parents only informed Mann of the attacks when they requested the letter from him for the purposes of the present proceedings. Given that neither Mann nor Kashmiri had personal knowledge of the attacks, their failure to discuss

5

the attacks in the letters does not conflict with Singh's testimony or cast doubt upon its accuracy. *See Lai*, 773 F.3d at 974. The BIA's reliance upon the omissions was therefore not supported by substantial evidence.

Third, the BIA's conclusion that Singh's testimony was internally inconsistent with regards to whether he had a registered voter card and whether he was able to vote in the elections was not supported by substantial evidence. From the present record, it is not clear whether there was any inconsistency at all. When first asked if there was a reason why he did not have a voter ID card, Singh gave a one-word response: "No." At this point in the testimony there had been no discussion of Congress Party's tactics to dissuade voting by Sikhs. Agency counsel did not follow up on the question, which could have been understood by Singh in any number of ways. When the subject did come up again, the questioning was more specific. DHS counsel asked: "Sir, . . . why would not having the card stop you from voting?" Singh answered accordingly: "Because the Congress Party workers were there, and because of that, we cannot put - we cannot cast our vote." Singh's two statements, when read in context, at best present a trivial inconsistency. *See Ren*, 648 F.3d at 1089 ("We conclude that, '[c]onsidering the totality of the circumstances, and all relevant factors,' 8 U.S.C. § 1158(b)(1)(B)(iii), the inconsistencies cited by the IJ are, both on their own and in the aggregate, manifestly trivial." (alteration in original)). Moreover, the BIA

6

erred in rejecting Singh's explanation for the inconsistency. *Zhi v. Holder*, 751 F.3d 1088, 1092 (9th Cir. 2014). Later, when asked about this inconsistency, Singh answered: "It's a mistake . . . . Perhaps I didn't understand the question . . . . I was giving answer in a hurry and I did not understand the question." In light of the open-ended nature of DHS counsel's question and Singh's one-word response, it is believable that Singh simply misunderstood the question or that he might reasonably have understood the question in various ways. *Perez-Arceo v. Lynch*, 821 F.3d 1178, 1184–85 (9th Cir. 2016) (concluding it was unclear whether there was any inconsistency at all where the government posed ambiguous and varying questions). For all of these reasons, we conclude that the inconsistency in testimony about Singh's voter ID card and voting history was not supported by substantial evidence in the record.

Because none of the bases for discrediting Singh finds support in the record, we reverse the adverse credibility determination and remand for further proceedings on Singh's claims for asylum, withholding of removal, and CAT relief.

PETITION GRANTED; REVERSED and REMANDED.

7

*Singh v. Whitaker*, No. 15-70612

BEA, Circuit Judge, dissenting:

I disagree with the majority that the BIA's conclusion that Singh was not credible was unsupported by the record. The BIA relied on three grounds to find that Singh was not credible: (1) the implausibility of Singh's testimony that he did not inform Mann Party leaders that he was attacked twice by Congress Party members, (2) the omission of any mention of the attacks on Singh in affidavits submitted by Mann Party leaders, and (3) inconsistencies in Singh's testimony relating to his voting history and voter ID card. For the reasons explained below, I conclude the record contained substantial evidence to support the BIA's decision that Singh's testimony was not credible, based on these three grounds. *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010). Whether I would have made the same decision is another and irrelevant question.

First, the IJ's conclusion that it was implausible that Singh would not have notified the Mann Party leaders of the two attacks by the Congress Party workers was supported by substantial evidence. Although Singh reported the first attack to the local police, he did not report either attack to the local Mann Party leader, Kashmiri, with whom Singh had transacted party matters. Singh's explanation for not reporting the attacks to Kashmiri

1

was to preserve the Mann Party's "balance." However, he does not explain what preserving the Party's "balance" means, nor why reporting the attacks to Kashmiri would upset this "balance." Moreover, this explanation does not make sense in light of the fact that he reported the first attack to the police. Nothing in the record indicates that police reports are confidential, rather than public, and that the police might not relate the attacks to the Mann Party as part of a police investigation. There is no reason why reporting the attack to the police would *not* upset the Party's "balance," while reporting the attacks to Kashmiri *would* upset the Party's "balance."

Second, I disagree with the majority that the IJ's reliance on the omission of any mention of the attacks in the letters of the Mann Party leaders (Kashmiri and Mann) ignores Singh's testimony that he did not inform those leaders of the attacks. Although the majority is correct that there is no evidence in the record that Kashmiri learned of the attacks, it is implausible that Mann would not mention the beatings in his letter. As the majority acknowledges, Singh testified that his parents informed Mann of the attacks when they requested the letter from Mann for the purpose of the present proceedings. Considering that the purpose of the letter was to establish that Singh would be persecuted, the two attacks would have been highly relevant in establishing this.

Third, the BIA's conclusion that Singh's testimony was internally inconsistent with regards to whether he had a registered voter ID card and whether he was able to vote in the elections was supported by substantial evidence. Singh contradicted himself twice as to voting. First, he was asked if there was a reason he did not have a voter ID card. Singh answered "No." Singh then related that Congress Party workers controlled the voter ID cards and would not give him a voter ID card because he would not vote for the Congress Party. That is a very obvious reason he did not have a voter ID card and a very obvious contradiction. In addition, Singh testified that he voted in 2004 or 2005 without a voter ID card, but also claimed he could not vote after 2000 without a voter ID card. This is another contradiction that he did not explain.

Because I agree with the BIA that Singh's testimony was not credible, I would deny Singh's petition for review.