NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 28 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DODY ADRIANTO WIDODO, AKA
Chloe London,

          Petitioner,

  v.

WILLIAM P. BARR, Attorney General,

          Respondent.

No.   18-70922

Agency No. A089-608-147

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 15, 2020[**]
San Francisco, California

Before: BERZON and IKUTA, Circuit Judges, and LEMELLE,[***] District Judge.

Dody Adrianto Widodo, aka Chloe London, a native and citizen of

Indonesia, petitions for review of the Board of Immigration Appeals' ("BIA")

---

    [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]     This appeal is ordered submitted on the briefs as of April 15, 2020, pursuant to Fed. R. App. P. 34(a)(2).

    [***]     The Honorable Ivan L.R. Lemelle, United States District Judge for the Eastern District of Louisiana, sitting by designation.

order dismissing her appeal from an immigration judge's ("IJ") decision denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We review for substantial evidence the agency's factual findings, applying the standards governing adverse credibility determinations created by the REAL ID Act. *Shrestha v. Holder*, 590 F.3d 1034, 1039–40 (9th Cir. 2010). In general, adverse credibility findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Rizk v. Holder*, 629 F.3d 1083, 1087 (9th Cir. 2011) (quoting 8 U.S.C. § 1252(b)(4)(B)). We review de novo questions of law. *Bhattarai v. Lynch*, 835 F.3d 1037, 1042 (9th Cir. 2016). We deny in part and grant in part the petition for review.

1. Substantial evidence supports the agency's adverse credibility finding based on inconsistent testimony between Widodo's first and last merits hearings regarding the harm she experienced in Indonesia. "[A]n adverse credibility determination may be supported by omissions that are not details, but new allegations that tell a much different—and more compelling—story of persecution than [the] initial application." *Silva-Pereira v. Lynch*, 827 F.3d 1176, 1185 (9th Cir. 2016) (alteration in original) (internal quotation marks omitted); *see also*

2

*Alvarez-Santos v. I.N.S.*, 332 F.3d 1245, 1254 (9th Cir. 2003). Here, Widodo testified at her 2017 merits hearing to several dramatic incidents of harm that she experienced in Indonesia. Widodo did not describe any of those incidents at her 2013 merits hearing, even though she was asked twice why she was afraid to return to Indonesia. Instead, she answered that she would have trouble finding a job, would have reduced educational opportunities, would not be permitted to undergo genital surgery, and would generally have less freedom than in the United States.

Moreover, the two reasons that Widodo gave for failing to mention the incidents during the first hearing do not compel us to reverse the BIA's credibility finding. *See Rizk*, 629 F.3d at 1088. First, she explained that she forgot about the incidents of harm when asked at her 2013 hearing, but we have previously rejected such an explanation where the petitioner has omitted dramatic incidents. *See Silva-Pereira*, 827 F.3d at 1186 ("[I]t is simply not believable that [a petitioner] would fail to remember such dramatic incidents so closely related to his asylum claim.") (cleaned up). Second, when the IJ asked Widodo why she didn't bring up any of the dramatic incidents of harm at her hearing four years prior, Widodo attempted to resolve the inconsistencies by saying "I couldn't even tell about my video to my attorney, Jasmine, because she said it's going to be [a] conflict of interest with

3

[Catholic Charities (the organization for which the representative worked)], so I don't know what I have to say." This explanation is not "reasonable [or] plausible," *Rizk*, 629 F.3d at 1088, as it is not clear how discussing potential incidents of persecution relevant to Widodo's asylum application could have caused a conflict of interest with Catholic Charities. Nor is it plausible to infer that Widodo believed she could not mention experiences related to her sexuality to her prior representative or the IJ; at her first hearing, Widodo discussed many experiences related to her sexuality. She stated that she "can have sex with female or male," she related parts of her sexual history, and she explained that she had obtained breast implants and was seeking sex reassignment surgery. We are therefore not compelled to reverse the BIA's adverse credibility finding.

We deny the petition with regard to the challenge to the agency's adverse credibility finding. Widodo's asylum and withholding of removal claims based on her past persecution in Indonesia therefore fail.

2. As to Widodo's asylum and withholding claims based on her well-founded fear of future persecution, we grant Respondent's request to remand the case to "permit the agency an opportunity to analyze whether Widodo demonstrated a well-founded fear of future persecution in Indonesia based on her

4

membership in a disfavored group, transgender women; and whether Widodo demonstrated a well-founded fear of future persecution on any other basis."

3. Finally, we hold that Widodo exhausted her CAT claim because she both explicitly appealed the IJ's CAT determination and challenged the only basis for which the IJ denied her relief under CAT—the adverse credibility determination. *See Rendon v. Mukasey*, 520 F.3d 967, 973 n.3 (9th Cir. 2008) (holding that an issue raised in connection with one form of relief, and addressed by the BIA, was exhausted for all forms of relief because "the legal issue involved [was] identical for all three forms of relief."). The BIA should consider the merits of Widodo's CAT claim on remand.

The petition for review is **GRANTED** in part, **DENIED** in part, and the case is **REMANDED** to the BIA for further proceedings.[1]

---

[1]Each party will bear its own costs on appeal.

*Widodo v. Barr*, No. 18-70922

BERZON, Circuit Judge, dissenting:

I concur in Paragraphs 2 and 3 of the memorandum disposition, but respectfully dissent from Paragraph 1.

The immigration judge ("IJ") and the Board of Immigration Appeals ("BIA") held that Widodo's 2017 testimony was "inconsistent" with her 2013 testimony and her I-589 application because she recounted incidents of past harm she had never described before. This determination is not supported by substantial evidence.

First, the IJ erred by not giving Widodo a reasonable opportunity to explain the apparent inconsistency between her written application and her 2017 testimony. *Soto-Olarte v. Holder*, 555 F.3d 1089, 1091–92 (9th Cir. 2009); *see also Perez-Arceo v. Lynch*, 821 F.3d 1178, 1184 (9th Cir. 2016). Widodo argues that if asked, she would have explained that her I-589 application was incomplete for reasons having to do with the representative who completed it. This Court has recognized "that preparers, whether lawyers or non-lawyers, are not always scrupulous, and that as a result, asylum applicants may be compelled to explain facts the preparer included in the application." *Alvarez-Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003). Widodo's representative explained on the record that she was "in a big hurry to prepare [Widodo's application]" and "expecte[ed] to amend it in the

1

future." Widodo's representative also explained that "there wasn't enough time to realize what's going on with respondent and then to prepare an application and then . . . to argue the merits." But Widodo's representative never filed an amended application. Because Widodo was not afforded an opportunity to explain the perceived inconsistency between her I-589 application and her 2017 testimony, the adverse credibility determination was not supported by substantial evidence insofar as it was based on this asserted discrepancy.

Second, Widodo's 2013 and 2017 testimony are not inconsistent. Widodo was not asked in 2013 any specific questions about past persecution. One explanation for Widodo's representative's failure to ask questions about past harm is that she did not know about the incidents Widodo described in 2017. Widodo has repeatedly explained that she did not feel comfortable telling her representative about what she experienced because of her sexuality. If an applicant "offers a 'reasonable and plausible explanation' for [an] apparent discrepancy, the IJ must provide a specific and cogent reason for rejecting it." *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011) (citation omitted). Although the BIA was "unpersuaded by" Widodo's explanation on appeal that Widodo was "embarrass[ed]" to share "all of the incidents that reflect on her sexuality with her representative from Catholic Charities," the BIA did not consider Widodo's explanations that she "couldn't even tell about my [pornography] video to my [representative] because

2

she said it's going to be conflict of interest with [Catholic Charities], so I don't know what I have to say," and that Widodo therefore "wasn't prepared" for her 2013 hearing. The BIA erred in failing to consider that Widodo was not prepared to testify fully in 2013 because she had not discussed incidents of past harm with her representative due to a perceived conflict of interest, and so her representative did not ask pertinent questions at the hearing.

Finally, the new testimony Widodo presented was in response to the BIA's remand order. The BIA remanded the case in 2015, requiring "further fact-finding on the issue of how the Indonesian law criminalizing same-sex sexual activity may affect [Widodo's] claim for asylum, withholding of removal, and protection under CAT." Widodo's testimony about past harm she experienced in Indonesia because of her bisexuality should be considered responsive to this directive, rather than inconsistent with her previous testimony.

For these reasons, I would hold the adverse credibility determination not supported by substantial evidence. I therefore would direct the BIA on remand to consider whether Widodo's testimony regarding past harm in Indonesia qualifies as past persecution, and if so to place the burden on the government with respect to whether Widodo has a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(1). *See also Avetova-Elisseva v. INS*, 213 F.3d 1192, 1198 (9th Cir.

2000) (evidence of past harm that does not amount to persecution is also relevant to the reasonableness of Widodo's fear of future persecution).