

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MISSION LINEN SUPPLY, a California corporation,

               Plaintiff-Appellee,

   v.

CITY OF VISALIA,

               Defendant-Appellant.

No. 19-15392

D.C. No.
1:15-cv-00672-AWI-EPG

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Submitted March 27, 2020**
San Francisco, California

Before: WALLACE, GRABER, and COLLINS, Circuit Judges.

The City of Visalia timely appeals from the district court's equal allocation

of future recovery costs between the City and Mission Linen Supply ("Mission"),

in this action under the Comprehensive Environmental Response, Compensation,

---

     *     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

     **     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

and Liability Act of 1980, 42 U.S.C. §§ 9601–75. Reviewing for abuse of discretion the district court's selection of factors and for clear error in its allocation of costs according to those factors, Boeing Co. v. Cascade Corp., 207 F.3d 1177, 1187 (9th Cir. 2000), we affirm.

The district court did not abuse its "broad discretion." TDY Holdings, LLC v. United States, 885 F.3d 1142, 1149 (9th Cir. 2018). The court permissibly focused on the factor of geographic distribution and attributed most responsibility for on-site pollution to Mission and most responsibility for off-site pollution to the City. See Boeing, 207 F.3d at 1187 (holding that district courts have discretion "to decide what factors ought to be considered"). On appeal, the City does not challenge the court's many factual findings concerning the City's sewers. They were "installed below general industry standards." The slope of some sewers was too flat, allowing wastewater to seep into the ground. Some sewers were too shallow. Other problems included "holes/broken pipes, exposed soil, cracks, sags, offset/separated joints, missing portions of pipe, root intrusion, debris, and deposits of material that indicate blockages and surcharge conditions." The City did not restrict or limit the dumping of PCE into the sewers. But for the defects in the sewers, the wastewater would have reached the City's treatment facilities.

2

The cases cited by the City do not support its view that the court here abused its discretion. As an initial matter, even if one of the cases were factually similar, the existence of discretion means that one district court could reach a conclusion different from the conclusion of another district court. In any event, none of the cited cases involved factually similar circumstances. See Boeing, 207 F.3d at 1180–82 (affirming allocation of 30% of costs to one landowner and 70% of costs to another landowner because of differing levels of pollution); Waste Mgmt. of Alameda Cty., Inc. v. E. Bay Reg'l Park Dist., 135 F. Supp. 2d 1071, 1089–1104 (N.D. Cal. 2001) (allocating 5% of the costs to the park district due to many factors, including the court's finding that the district had done little to cause the contamination); United States v. Davis, 31 F. Supp. 2d 45, 65–67 (D.R.I. 1998) (allocating 35% of costs to transporters of chemicals even though the landfill operator was at greater fault), aff'd, 261 F.3d 1 (1st Cir. 2001).

The dissent asserts that the district court abused its discretion because, in the dissent's view, the court's two alternative methodologies rested on differing underlying assumptions. The City has never raised this argument, so it is forfeited. Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999). The dissent's selective quotations from the City's "Statement of the Case," on page 6 of the opening brief, are not sufficient to preserve the issue. Nowhere in that passage or elsewhere did

3

the City assert that the district court abused its discretion by using alternative methods that rested on <u>contradictory assumptions</u>. Moreover, even if we read the opening pages of the City's brief expansively to encompass the argument, the City's bald assertion in passing is insufficient to preserve the issue. <u>See, e.g.</u>, <u>United States v. Graf</u>, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived."); <u>Greenwood v. FAA</u>, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief."); <u>id.</u> ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim.").

In any event, we are unpersuaded that the court's use of alternative methodologies was an abuse of discretion. The court's primary method took account of nuance: the court looked to 46 different plume circles, each extending 35 feet from a central point of measurement; the court allocated costs to each party—the City, Mission, and Mission's predecessor—depending on whether the party's activities contributed to the plume; and the court assigned proportionate responsibility to the City and Mission for the predecessor's share. The court's alternative method was simpler: it looked solely at the 46 points of measurement and allocated all costs from on-site or on-the-border measurements to Mission and

4

all costs from purely off-site measurements to the City. We commend the district court for checking the reasonableness of its nuanced primary methodology by reference to a simpler alternative methodology.

**AFFIRMED.**

*Mission Linen Supply v. City of Visalia*, No. 19-15392

COLLINS, Circuit Judge, dissenting:

This case involves an action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") to allocate responsibility for underground pollution that originated at a dry-cleaning facility in the City of Visalia, California. Between 1971 and 1983, Mission Linen Supply ("Mission") and the previous owner of the main property in question (Star Laundry & Dry Cleaning ("Star")) operated dry-cleaning facilities that discharged perchloroethylene ("PCE") into the City's sewers. Due to the sewers' numerous defects and poor maintenance, PCE leaked out of the sewers and created a substantial underground "plume" in the vicinity of the property. After a bench trial, the district court allocated 50% of the responsibility for future cleanup costs to Mission and 50% to the City. (Star was no longer in existence and was not a party to the CERCLA action.) The majority rejects the City's appeal, concluding that the district court did not abuse its broad discretion. I respectfully dissent.

CERCLA explicitly gives district courts discretion to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). I agree that the district court did not abuse its discretion in identifying the three principal considerations on which it based its allocation decision: (1) how to divide up the pollution plume by its "geographic

1

features," *i.e.*, which portions of the plume counted as being on Mission's property and which counted as offsite; (2) how to assign responsibility for offsite portions of the plume; and (3) how to allocate the "orphan" responsibility of Star. *See Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1187 (9th Cir. 2000) (exercise of "discretion to select factors" is reviewed only for abuse of discretion).

Having identified those considerations, the district court then needed to make a judgment as to each of them and determine an appropriate allocation in light of those judgments. We "review for clear error the allocation according to the selected factors," *TDY Holdings, LLC v. United States*, 885 F.3d 1142, 1147 (9th Cir. 2018), meaning that "[w]e may not reverse a district court's exercise of its discretion unless we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors," *SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir. 2001). Here, the district court committed a clear error of judgment by relying upon two sets of internally inconsistent findings. *See*, *e.g.*, *Perez-Arceo v. Lynch*, 821 F.3d 1178, 1186 (9th Cir. 2016) ("'Factual findings that are internally inconsistent . . . are clearly erroneous.'") (quoting 9C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2579 n.9 (3d ed. 2016)); *Caruso Enters., Inc. v. U.S.A. Motel Corp. (In re U.S.A. Motel Corp.)*, 450 F.2d 499, 503 (9th Cir. 1971) (findings are clearly erroneous when they are "significantly contradictory"). Specifically, the district

2

court adopted two alternative sets of findings as to how to resolve the three key questions it had identified, and these two methods rest on an unexplained mixing and matching of *contradictory* answers to these three questions.[1]

In devising two alternative methods of allocation, the district court began with the proposed allocation method of Mission's expert, Keith O'Brien, and then made various modifications to that method. As the district court explained, O'Brien devised a color-coded map showing several dozen circles, each of which was "imposed over the soil vapor contamination" in a given area of the property and its vicinity. The district court concluded that these circles could "be used as a form of units in measurement[,] . . . because they are indicative of the underlying contamination plume." O'Brien assigned those circles he characterized as being

---

[1] The majority asserts that the City "has never raised this argument," *see* Memorandum at 3, but that is wrong. In its opening brief, the City explicitly complained that, by invoking two alternative theories, the district court "did not specify the theory with which it was rendering its decision" and that, as a result, its findings are tainted by the "substantial flaw" that "the parties and this Court cannot tell how the District Court actually arrived at its decision." The fact that these contentions were made in the City's highly argumentative "Statement of the Case," *see id.*, is of no moment; we should not ignore an argument simply because it is made in one section of a brief versus another. *See*, *e.g.*, *United States v. Valdivia*, 492 F.2d 199, 203–04 (9th Cir. 1973) (considering sufficiency-of-the-evidence argument made in the "statement of facts" in the brief, even though the appellant had "not devoted a specific section of his brief" to that argument). Moreover, after expressly complaining about the district court's use of alternative methods, the City then goes on in its brief to explain why the district court's various judgments under each method were unexplained or flawed. That is enough to place the adequacy of those findings before us, and the findings' self-contradictory nature is impossible to ignore.

on the property and away from the sewers to Mission and Star. The circles he considered to be offsite he assigned in classes either to the City and Mission, to the City and Star, or to the City, Mission, and Star, depending upon which companies had been shown to have used which nearby sewer lines. For each such class of circles, he divided the number of circles in the class by the number of parties responsible for that class and then assigned each party an equal share of the circles in that class. Having thus assigned total fractional shares of circles to each responsible party, he calculated the ratio of Mission's share to the City's share and then reassigned Star's share to each in that same proportion. His method yielded approximately 24 circles for the City and 22 for Mission.

The first of the two alternative methods adopted by the district court followed O'Brien's method, except that it applied a more lenient concept of what counted as an onsite circle attributable to Mission and Star, thereby increasing the number of such circles from three to nine. That resulted in an allocation of 15 circles to Mission, 16 to Star, and 15 to the City. Because Mission and Star each had 15 circles, the court then reallocated Star's 16 circles equally to Mission and Star, giving each 23 circles—a 50/50 split.

In the second alternative method, the district court applied an even broader concept of what counted as an onsite circle, increasing the number of such circles from nine to 23. Having done so, however, it then *changed* its rule for allocating

4

the offsite circles: instead of allocating those circles to the City *and* the respective users of the relevant sewer line, the court instead now allocated *all* of the offsite circles to the City.  It then likewise changed its rule for allocating Star's share and instead allocated it completely to Mission.  That yielded 23 onsite circles allocated entirely to Mission and 23 offsite circles allocated entirely to the City—the same answer as the first method.

Although both alternative methods yielded the same 50/50 split, the two methods rested on an arbitrary pairing of *contradictory* answers to the three key allocation factors.  In what I will call method "A," the court applied these three assumptions:

(A)(1) **Defining onsite circles:**  The court narrowly defined what counted as an onsite circle to be attributed to Mission and Star (although not as narrowly as O'Brien).

(A)(2) **Allocating offsite circles:**  For the offsite circles, the court allocated responsibility equally to the City and to the relevant operators.

(A)(3) **Allocating Star's share:**  For the orphan share of Star, the court allocated Star's share equally to Mission and to the City based on their respective total allocations from (A)(1) & (A)(2).

But in the alternative method (which I will call method "B"), it applied these three different assumptions:

(B)(1) **Defining onsite circles:**  The court more broadly defined what counted as an onsite circle to be attributed to Mission and Star.

(B)(2) **Allocating offsite circles:**  For the offsite circles, the court allocated responsibility 100% to the City.

(B)(3) *Allocating Star's share*: For the orphan share of Star, the court allocated 100% to Mission.

The district court committed clear error by arbitrarily pairing collections of contradictory answers to the three key allocation factors. The district court did not explain why, for example, expanding the concept of an onsite circle (as in method B) should lead to *changing* the methods for allocating offsite circles or Star's share. Nor did the court explain why it did not instead combine, say, assumption (B)(1) with assumptions (A)(2) and (A)(3) (which would have yielded roughly a 37/63 split between the City and Mission) or assumption (B)(1) with assumptions (A)(2) and (B)(3) (which would have yielded roughly a 22/78 split between the City and Mission). The decision as to which of the opposite predicate assumptions to pair with which of the other opposite predicate assumptions seems to me on this record to have been wholly arbitrary.

The majority claims that these various contrary propositions can be reconciled, but the logic escapes me. According to the majority, the first method reflects "nuance" that attempted to allocate shares "depending on whether the party's activities contributed to the plume," while the second method is "simpler" and "allocated all costs from on-site or on-the-border [circles] to Mission and all costs from purely off-site [circles] to the City." Memorandum at 4–5. The majority's description of one method as "nuanced" and the other as "simpler" simply begs the question. The majority never addresses, much less resolves, the

6

fundamental contradictions between the district court's two methods, which are that (1) they inexplicably used two significantly different understandings of what constituted an onsite circle (one of which counted 23 circles as onsite, and the other of which counted only nine as onsite); and (2) they inexplicably use two different methods for re-allocating Star's orphan share. One is not a "simpler" form of the same, more "nuanced" analysis. Each is a different—and contradictory—analysis.

We afford broad discretion to district courts in CERCLA cases, but we do so based on the assumption that they will articulate a coherent and internally consistent resolution of the major factors supporting any given allocation. That did not happen here, and the resulting allocation therefore rests on clear error. I respectfully dissent.