**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| FALILOU GASTON BONNAIRE, AKA Falilou Bonnaire, | No.    17-72966 |
| Petitioner, | Agency No. A209-870-023 |
| v. | MEMORANDUM[*] |
| WILLIAM P. BARR, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 15, 2020[**]
San Francisco, California

Before:  FRIEDLAND and BENNETT, Circuit Judges, and RAKOFF,[***] District Judge.

Petitioner Falilou Gaston Bonnaire ("Bonnaire"), a native and citizen of

Senegal, petitions for review of a decision of the Board of Immigration Appeals

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

("BIA") affirming the decision of an Immigration Judge ("IJ") denying Bonnaire's applications for withholding of removal and relief under the Convention Against Torture ("CAT") based on an adverse credibility determination.[1] We have jurisdiction under 8 U.S.C. § 1252. Reviewing questions of law de novo and the agency's factual findings for substantial evidence, *Bhattarai v. Lynch*, 835 F.3d 1037, 1042 (9th Cir. 2016), we grant the petition for review.

The IJ deemed Bonnaire not credible because (1) he gave some "vague and non-responsive" answers when cross-examined, and (2) the letters of support he submitted from his mother and brother did not corroborate certain aspects of his testimony. The BIA affirmed the IJ's adverse credibility finding and identified five specific instances of what the BIA characterized as Bonnaire's non-responsiveness. Because "the BIA reviewed the IJ's credibility-based decision for clear error and 'relied upon the IJ's opinion as a statement of reasons' but 'did not merely provide a boilerplate opinion,'" we "review here the reasons explicitly identified by the BIA, and then examine the reasoning articulated in the IJ's . . . decision in support of those reasons." *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014) (quoting *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008)).

1. Substantial evidence does not support the BIA's conclusion that Bonnaire lacked credibility. Two of the five instances that the BIA characterized as non-

---

[1] Bonnaire does not challenge the BIA's denial of his application for asylum.

2

responsive were attributable to technical problems with the videoconference by which Bonnaire's hearing was conducted.[2]  First, when Bonnaire was asked how long he had been in a particular relationship, the interpreter conveyed Bonnaire's response as "27 – 22 until I was 28."  But when Government counsel asked Bonnaire to confirm that answer, he immediately clarified: "The interpreter might have . . . misheard me, but I said I was 21 until I turned 22."  "[I]nconsistencies in testimony that possibly resulted from mistranslation or miscommunication do not support an adverse credibility finding."  *Perez-Lastor v. I.N.S.*, 208 F.3d 773, 781 (9th Cir. 2000).

Second, when Bonnaire was asked whether he had attended a Muslim naming ceremony—a basic fact about which he had testified consistently throughout his proceedings—the transcript's initial indication that he gave "[No audible response]" before answering "Yes" was plainly a reflection of a delay in the videoconference transmission.  Indeed, when the transcript recorded "[No audible response]" from Bonnaire with respect to another question earlier in the hearing, the interpreter explained to the IJ, "I think there's a delay in [the transmission]."

As to the third instance characterized as non-responsive by the BIA,

---

[2] Bonnaire appeared pro se at the hearing via videoconference from an immigration detention center, and the transcript indicates that the hearing participants had difficulty hearing each other throughout.

Bonnaire took some time in answering a question about the name of the hospital to which he was taken after he was stabbed by his father. But he later provided an explanation for his delayed response—that he remembered only the colloquial name of the hospital, and was trying to recall "the exact name on the papers, the official name." The agency did not address that seemingly plausible explanation, which was error. *See Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011).

The fourth instance characterized as non-responsive by the BIA was the result of Bonnaire's being asked a confusing question about a supposed inconsistency between two statements that were not actually inconsistent. During his credible fear interview, when asked whether *he* had reported his stabbing to the police, Bonnaire responded that he had not, but that the police had interviewed him nonetheless. During his hearing, Bonnaire explained that the police had spoken to him because his *mother* reported the stabbing. Although these two statements were not contradictory, Government counsel pressed Bonnaire on why he had not specified at his credible fear interview that it was his mother who had called the police. Instead of answering that question directly, Bonnaire repeated that he had not personally contacted the police, and that it was his mother's report that had prompted the police to interview him. This attempt by Bonnaire to explain that his statements were consistent was not a refusal to respond, but rather reflected the confusing question he was asked. *See Shrestha v. Holder*, 590 F.3d 1034, 1044

4

(9th Cir. 2010) (instructing that "an adverse credibility determination must be assessed under a rule of reason" that "recognize[s] . . . the normal limits of human understanding").

Finally, we agree with the BIA that Bonnaire's fifth cited answer was initially non-responsive, but because he then answered the question, we conclude that this one instance was not actually an example of non-responsiveness when viewed in context. Bonnaire gave an answer that was a non sequitur when first asked how his father would find out if Bonnaire were to be deported to Senegal. When the question was repeated, however, he provided a fully responsive answer. This was not an "instance of blatant and unexplained unresponsiveness." *See id.* at 1045.

2. The second rationale the BIA provided for its adverse credibility determination—that Bonnaire failed to produce evidence corroborating certain aspects of his testimony—was also erroneous. "[A]n IJ cannot articulate for the first time in her decision denying relief that key corroborative evidence is missing." *Bhattarai*, 835 F.3d at 1043. Yet that is precisely what the IJ did here. The IJ gave Bonnaire no indication that the letters from his family lacked certain corroborating details before issuing the decision denying his claims. As a result, Bonnaire was not given "notice of the corroboration that [was] required and an opportunity either to produce the requisite corroborative evidence or to explain

why that evidence [was] not reasonably available." *Ren v. Holder*, 648 F.3d 1079, 1093 (9th Cir. 2011).[3]

We reject the Government's contention that the IJ's error was rendered harmless because Bonnaire "was given an opportunity to explain" the omissions in his family's letters when he appealed to the BIA. Bonnaire was entitled not just to an opportunity to *explain* the omissions, but also to "an opportunity . . . to *produce* the requisite corroborative evidence." *Id.* at 1093 (emphasis added). And it is the IJ, not the BIA, that would need to evaluate any additional evidence from Bonnaire and make corresponding findings about the strength of his claims in the first instance. *See Vitug v. Holder*, 723 F.3d 1056, 1063 (9th Cir. 2013); *see also* 8 C.F.R. § 1003.1(d)(3)(iv) ("[T]he Board will not engage in factfinding in the course of deciding appeals.").

"Because the BIA and IJ's non-corroboration reasons for the adverse credibility determination fail, we consider [Bonnaire] 'otherwise credible.'" *Bhattarai*, 835 F.3d at 1046. Accordingly, we grant the petition for review and remand for consideration of the merits of Bonnaire's withholding and CAT

---

[3] Contrary to the Government's contention, Bonnaire adequately exhausted this issue before the agency by explicitly arguing in his brief to the BIA that the IJ erred in finding him not credible based on the omissions in his family's letters. *See Moreno-Morante v. Gonzales*, 490 F.3d 1172, 1173 n.1 (9th Cir. 2007).

claims.[4] If the agency determines on remand that Bonnaire's credible testimony is insufficient to meet his burden of proof without additional corroborating evidence, the IJ must give Bonnaire "an opportunity to provide that evidence or explain why he cannot reasonably obtain it." *See id.* at 1048.

**PETITION GRANTED.**

---

[4] We note that the BIA erred in stating that Bonnaire failed to challenge the IJ's denial of his CAT claim. Bonnaire's brief to the BIA made clear that he was "appeal[ing] the Immigration Judge's (IJ) decision denying . . . withholding of removal[] *and protection under the Convention Against Torture* due to . . . an adverse credibility finding." Bonnaire therefore adequately exhausted his CAT claim before the agency. *See Ren*, 648 F.3d at 1083-84.